UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHRISTOPHER M. VANGUILDER,

                              Petitioner,

      -against-                            9:17-CV-0215 (LEK)

DANIEL MARTUSCELLO,

                              Respondent.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Petitioner Christopher Vanguilder seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1 ("Petition"). Respondent opposes the Petition. Dkt. No. 20 ("Answer"); see also Dkt. Nos. 20-1 ("State Court Records"); 20-2 and -3 ("Transcripts"); 20-4 ("Respondent's Memorandum of Law"); 24 ("Trial Exhibits"). Petitioner filed a reply. Dkt. No. 27 ("Traverse"). For the reasons that follow, the Petition is denied and dismissed.

## II.    BACKGROUND

### A.  Overview

The facts associated with Petitioner's underlying criminal conviction are not in dispute.

> On two separate occasions, a police officer fit a confidential informant (hereinafter the CI) with a recording device and sent him into [Petitioner]'s mobile home in Saratoga County to buy crack cocaine. After both controlled buys occurred, [Petitioner] and Sadie Willis were indicted for the crimes of criminal sale of a controlled substance in the third degree (two counts), criminal possession of a controlled substance in the third degree (two counts), and criminal possession of a controlled substance in the seventh degree (two counts). In full satisfaction of the indictment against her, Willis pleaded guilty to attempted sale of a controlled substance in the third degree and agreed to testify against [Petitioner]. Following a jury

trial, at which [Petitioner] raised the defense of agency, [Petitioner] was convicted as charged and sentenced, as a second felony drug offender, to an aggregate prison term of 10 years to be followed by six years of postrelease supervision.

People v. Vanguilder, 14 N.Y.S.3d 532, 534 (App. Div. 2015), lv. denied, 59 N.E.3d 1229

(N.Y. 2016).

### B. Voir Dire

During voir dire, the following exchange occurred concerning defense counsel's

representation of Petitioner:

| | |
|---|---|
| Defense: | After the [CI]'s name was disclosed, and still not until sometime after that it took me to figure out that he is actually a witness in a personal injury case that I'm handling for the [CI]'s girlfriend . . . So, I don't represent him. It's not a conflict of interest. I've discussed it with my client. We agree it's not in any way affecting my ability to represent him. And I . . . just wanted to put that on the table. |
| Court: | All right. [Petitioner], do you understand all of this? |
| Petitioner: | Yes. |
| Court: | And in spite of what [defense counsel] has said, do you still want him to represent you in this matter? |
| Petitioner: | Yes. |

Tr. 74–75. All parties agreed that there was no actual conflict and, at most, a potential conflict.

Id. at 76. The court again asked Petitioner if he wanted counsel to continue to represent him, and

Petitioner answered in the affirmative. Id.

2

### C.  The Trial

At the time of his arrest, Petitioner lived in a trailer park in Saratoga County.

Id. at 303–04. Petitioner was a drug addict and had previously been convicted for possessing a

controlled substance with intent to sell. Id. at 424, 466–68, 471, 485, 504–05.

Willis testified that she was a drug dealer from New York City who, during the year prior

to her arrest, would travel upstate approximately once a month and stay at Petitioner's trailer to

sell drugs to his contacts. Id. at 466–70. Willis also testified that she was the dealer and Petitioner

was a user. Id. at 466, 491. However, she also referred to herself and Petitioner as a "team." Id.

Generally, a buyer "would come to the door," Willis "would have the product, [she] would give

it to [Petitioner], he would give it to . . . [the buyer, and then Petitioner] would get the money and

return it to [Willis]." Id. at 469. Willis testified that she incorrectly believed this process would

insulate her from criminal liability. Id. at 472–73, 477.

In return, Willis provided Petitioner with crack cocaine. Id. at 468–70. The amount and

frequency with which Willis provided drugs depended on whether she "felt he deserved it" based

on the sales made and amount of product she had available. Id. at 469–70, 475–76, 485–86, 490.

Consistent with industry custom, Petitioner also received crack cocaine as a "tip" from some of

the buyers that purchased drugs out of his home. Id. at 419–25, 487–88.

The CI, Terrence Seymour, was the buyer in two transactions with Willis and Petitioner.

Id. at 302–03, 342, 368–69. He testified that he had acted as a confidential informant in dozens

of controlled buys for the police over the previous two years. Id. In that role, Seymour was

compensated $50 per buy; however, he continued working with law enforcement not because of

3

the payment, but because of his personal experience as an addict and losing friends and family to drugs. Id. at 370, 378–79, 381, 501.

Seymour recounted his relationship with Petitioner: He met Petitioner approximately one month prior to the controlled buys and visited Petitioner's home approximately three or four times during that month. Id. at 371–73. Seymour also testified he met Willis approximately one week before the controlled buys. Id. at 374–75.

Seymour's testimony then focused on the two drug sales that gave rise to the underlying criminal charges. The first controlled buy occurred at approximately 2:00 P.M. on April 26, 2013. Id. at 374. Law enforcement provided Seymour with video and audio equipment and money for the buy. Id. at 376, 378–79. A law enforcement agent drove Seymour to Petitioner's trailer. Id. at 377–78; Ex. 4 at 00:00–05:40. Seymour knocked on the door, went inside, said hello to Willis, and informed her that he had $100 with which to buy cocaine. Tr. at 378; Ex. 4 at 05:42–06:30. Seymour  and Willis waited for Petitioner, as Willis would not directly sell the crack cocaine that she had on her person to Seymour. Tr. at 379; Ex. 4 at 06:43–10:20. When Petitioner arrived a few minutes later, he acted as the intermediary, taking the cocaine from Willis and giving it to Seymour, and taking the money from Seymour and giving it to Willis. Tr. at 379; Ex. 4 at 10:22–10:53. Petitioner then repeatedly asked Seymour if the crack cocaine was "rocky enough" and "hard enough," encouraging him to "pinch it." Ex. 4 at 10:54–11:01.[1] Petitioner asked that Seymour provide him with a "tip" of crack cocaine, which Seymour refused to do before leaving Petitioner's home. Tr. at 379–80, 402, 421–22; Ex. 4 at 11:06–11:51.

---

[1] Seymour and Willis testified that quality crack cocaine was hard, not soft. Tr. at 384 ("The harder, the better . . . [b]ecause if it's soft, then it's . . . got a bunch of cut in it."), 385, 401, 430, 474–75.

Seymour got back into the officer's vehicle; returned the recording equipment; provided the officer with the drugs from the buy; and returned to the Sheriff's station. Tr. at 380; Ex. 4 at 12:10–13:16.

A few hours later, Seymour and the officer returned to Petitioner's trailer to attempt another controlled buy. Tr. at 380–81. Seymour and the officer followed the same procedure: Seymour was given recording devices, money for himself, and money for the buy. Tr. at 380–81; Ex. 5 at 00:00–06:45. Seymour knocked on the door, was told to come in, and informed Petitioner he had another $100 to buy more crack cocaine. Tr. at 381–82; Ex. 5 at 06:46–07:19. Petitioner took Seymour's money, counted it, received a piece of crack from Willis, and gave it to Seymour. Tr. at 382; Ex. 5 at 07:20–08:50. Petitioner again asked for a "tip" of cocaine. Tr. at 382, 403–04, 423; Ex. 5 at 07:47–07:50. Seymour again declined, left Petitioner's home, got back into the officer's vehicle, and drove away. Tr. at 382–83, 423–24; Ex. 5 at 07:50–10:15. Both controlled buys were recorded and the recordings were played for the jury. Tr. at 388, 390.

On cross-examination, defense counsel extensively questioned Seymour regarding his criminal history and drug abuse. Id. at 366–68. Defense counsel proffered that Seymour refused to cooperate against higher level drug dealers, even insinuating that Seymour had tipped off the supplier in this instance. Id. at 441–47. Seymour conceded that he had refused to set up certain drug dealers, citing the danger of the work and the safety risk to himself and his loved ones. Id. at 446–47. Such risks were further pursued on redirect examination; the CI shared an experience

when he had a gun pulled on him at Petitioner's house around the time of the controlled buys.[2]

Id. at 451–52.

The court held a charge conference prior to summations. Id. at 525–29. During that

conference, the prosecution requested an accessory charge. Id. at 525. The court granted the

request over defense counsel's objection. Id. at 525–26. Additionally, trial counsel requested and

received an agency charge. Id. at 526. The agency defense relieves a defendant from liability for

"selling a controlled substance or of possessing a controlled substance with the intent to sell if

[the defendant] was acting as the agent of the buyer." Id. at 585. The court provided a list of

factors to help determine whether Petitioner acted as an agent, including the relationship between

Petitioner and Seymour; the person who suggested the transaction; whether Petitioner promoted

---

[2]  The court twice gave a limiting instruction that mentioned the gun testimony. Id. at 453–54, 577–78. The general sum and substance was the same for both instructions, though they were not identical. The first instruction was as follows:

> I have allowed the People to introduce evidence that a number of times, either before or after March 26th, 2013 [sic], Terrance Seymour went to [Petitioner's] residence. Mr. Seymour talked about buying drugs, about seeing drug activity. He talked about P and . . . Willis being at the residence. He talked about someone with a handgun. This testimony is no proof whatsoever that the [Petitioner] possessed a propensity or disposition to commit the crimes charged in this Indictment or any other crime. It is not offered for such a purpose, and it must not be considered by you for that purpose. Instead, the People offer such evidence solely for the purpose of attempting to prove that the [Petitioner] had an intent to sell cocaine at the times charged in this Indictment in order to disprove the defense of agency. And these are solely contentions of the prosecution. I charge you that such evidence may be considered by you only for such limited purpose and for none other.

Id. at 453–54. Trial counsel never objected to the limiting instruction.

6

the drugs during the sale; whether Petitioner was compensated for his efforts; the person who had control of the drugs prior to the sale; and whether Petitioner ever engaged in the sale of a controlled substance in the past. Id. at 586–87. After summations, the court charged the jury. Id. at 565–96.

During deliberations, the jury sent several notes to the court. The first note asked to "[(1)] get clarification of agency, [(2)] . . . get the elements for agency and against agency, [and (3)] . . . get all elements of each charge." Id. at 598. With counsels' consent, the court emphasized that the agency charge included factors to be considered, not elements to be proven; denied the jury's request for a written copy of the charges; and read back the portion of the jury charge concerning the agency defense and criminal statutes. Id. at 598–608.

The second note asked whether Petitioner "ha[d] to meet all factors of agency in order for agency to be a true defense, or d[id] he only have to meet one, or is there no specific amount and is it up to the jury to determine the weight for each." Id. at 609. Next, the jury asked, "Can a defendant be an agent for both the seller and buyer?" Id. at 609-610. After hearing arguments from counsel, id. at 610–15, the court answered the jury's questions as follows: (1) there were no predetermined number of factors that must be satisfied for the agency defense to apply, and whether the defense applied was a determination for the jury; and (2) "[i]n order for the agency defense to apply . . . the Defendant must have been solely an agent of the buyer alone," id. at 615–16.

The third note asked if the court would again read the agency charge and, while the charge was being read, allow notebooks in the courtroom for the jury to take notes. Id. at 616. Counsel deferred to the court on whether notebooks would be appropriate. Id. at 617. The court

7

permitted the jury to take notes and re-read the portion of the charge regarding agency. Id.
at 618–22.

The fourth note asked the court for further explanation on "association law." Id. at 623.
The court later determined that the jury was actually asking about accessorial liability. Id.
at 623–24. The court re-read that portion of the charge and excused the jury for the day. Id.
at 624–630.

The following afternoon, the jury found Petitioner guilty on all six counts. Id. at 631–32.

**D. Motion to Vacate Judgment of Conviction**

On October 3, 2014, Petitioner filed a brief in Saratoga County Court pursuant to
Criminal Procedure Law § 440.10, arguing that his conviction should be vacated because trial
counsel failed to remove himself due to a conflict of interest and failed to pursue a defense of
entrapment. SCR at 1–10.

On October 10, 2014, the county court denied Petitioner's motion. Id. at 21–22. The court
held that Petitioner "ha[d] been assigned an attorney to represent him on direct appeal to the
Appellate Division, Third Department, and that appeal [wa]s pending. The record of this
proceeding [wa]s sufficient to permit a review of these issues on direct appeal. Thus, a collateral
proceeding under CPL 440 [wa]s inappropriate." Id. at 21 (quoting People v. Cooks, 49 N.E.2d
676 (N.Y. 1986)).

Petitioner sought permission to appeal the county court's order, which was denied by the
Third Department on December 2, 2014. Id. at 58. Petitioner then sought permission from the
New York Court of Appeals to appeal the decision. Id. at 59–107. On February 5, 2015, "the

application [wa]s dismissed because the order sought to be appealed from [wa]s not appealable [under New York law]." Id. at 108.

On January 26, 2015, Petitioner filed a counseled brief on direct appeal to the Third Department, in which he argued as follows: (1) the evidence at trial was legally insufficient to prove his guilt and the verdict was against the weight of the evidence; (2) the trial court erred in admitting irrelevant and prejudicial evidence about Seymour being threatened with a gun and twice instructing the jury as to its probative value; (3) the trial court failed to provide proper and meaningful responses to the jury's supplemental instruction requests; (4) Petitioner's sentence was harsh and excessive; (5) Counts II and III (Criminal Possession of a Controlled Substance in the Third Degree) and Counts V and VI (Criminal Possession of a Controlled Substance in the Seventh Degree) of the indictment improperly charged a single offense; and (6) trial counsel was ineffective for failing to file appropriate motions and mount an appropriate defense.[3] Id. at 178–216.

The Third Department affirmed Petitioner's conviction. Vanguilder, 14 N.Y.S.3d at 534. With respect to his first claim, the Third Department held that "[t]he verdict [wa]s supported by legally sufficient evidence and [wa]s not against the weight of such evidence." Id. The court outlined the People's burden "to establish that [Petitioner] knowingly and unlawfully possessed a narcotic drug with intent to sell it, and that [Petitioner] knowingly and unlawfully sold a narcotic drug . . . [without] act[ing] solely as the agent of the buyer . . . ." Id. (internal quotation marks

---

[3] Specifically, Petitioner argued that trial counsel's performance was deficient when he "failed to move to dismiss Counts III and VI of the indictment as multiplicitous," failed to elaborate on Petitioner's struggle with drug addiction, and failed to provide him with meaningful representation given his conflict of interest representing Seymour's girlfriend in a personal injury case. Id. at 210–13.

and citations omitted). The issue of whether an individual is an agent "is generally a factual

question for the jury to resolve on the circumstances of the particular case." Id. at 535.

> [T]he jury may consider such factors as the nature and extent of the
> relationship between the defendant and the buyer, whether it was the
> buyer or the defendant who suggested the purchase, whether the
> defendant has had other drug dealings with this or other buyers or
> sellers and, of course, whether the defendant profited, or stood to
> profit, from the transaction. Notably, profit does not necessarily
> equate with pecuniary gain in determining whether a defendant may
> stand to benefit from the underlying sale.

Id. (internal quotation marks and citations omitted). In examining the above factors, the court

noted that there was a "salesman-like" quality to how Petitioner touted the drugs to Seymour;

Petitioner was compensated for his efforts with crack cocaine; and Petitioner had previously been

convicted for criminal possession during a drug transaction. Id. at 535–36. Thus, "[v]iewing the

foregoing evidence in a light most favorable to the People . . . , the evidence evinces that

[Petitioner] played a greater role than just a buyer's agent . . . ." Id. at 536. Moreover, "[t]he jury

was . . . entitled to credit this evidence . . . and, deferring to those credibility determinations, [the

court] d[id] not find [the] convictions to be against the weight of the evidence." Id.

Next, the Third Department held that Petitioner's argument regarding Seymour's gun

testimony was not properly preserved for review. Id. Additionally, the Third Department found

the trial court "did not err in allowing testimony that a person threatened the CI with a gun in

[Petitioner's] home." Id. It determined that "the evidence in question was relevant given previous

questioning by defense counsel as to whether the CI chose to implicate [Petitioner]—rather than

allegedly more central drug dealers in the operation—because [it] . . . would be safer for the CI."

Id. Also, it found that "any minimal prejudice . . . that could arise from the CI's description of

another party's bad act in [Petitioner]'s home did not substantially outweigh the probative value of such evidence, especially given the court's limiting instructions." Id.

Further, the Third Department found that the trial court "provided the jury with meaningful responses to [its] inquiries during deliberations." Id. Petitioner was upset because the court "failed to offer a supplemental explanation directly addressing the relationship between the agency defense and accessorial liability." Id. However, the court found that the jury "did not explicitly seek an explanation from the court as to the relationship between the defense and that theory of liability . . . [; therefore, the trial c]ourt's choice to accurately answer the questions that the jury asked without going beyond the jury's request was within the court's discretion and appropriately responsive." Id.

With respect to the duplicate charges, the People agreed that "the two counts of criminal possession of a controlled substance in the seventh degree [we]re inclusory concurrent counts of criminal possession . . . in the third degree . . . [which should have been] submitted in the alternative since a conviction on the greater count is deemed a dismissal of every lesser count." Id. at 536–37. Accordingly, the Third Department reversed and vacated the concurrent, one-year misdemeanor sentences for criminal possession in the seventh degree. Id. However, the Third Department emphasized "that defense counsel's failure to request an alternative charge on these counts [does not] elevate[] this case to the level of one of those rare cases where a single lapse can constitute ineffective assistance of counsel." Id. Given Petitioner's prior felony conviction and pending felony charges, "and absent any proof that counsel's failure was greater than that of failing to properly attend to the misdemeanor charges," the Third Department held that Petitioner did not receive ineffective assistance of counsel. Id. Further, Petitioner "fail[ed] to even allege

11

that a potential conflict arising from defense counsel's simultaneous representation of a third

party in an unrelated matter affected, or operated on, or bore a substantial relation to the conduct

of the defense in this case . . . ." Id. at 537–38. Accordingly, Petitioner's contentions of

ineffective assistance of counsel based on a conflict of interest were "unavailing." Id. at 538.

Finally, the court concluded that, because Petitioner's sentence was less than the maximum

authorized statutory amount, it was neither harsh nor excessive given his criminal history. Id.

On July 21, 2015, Petitioner requested permission for leave to appeal, but only regarding

whether the Third Department erred in its determination that the trial court properly answered the

jury's inquiries. SCR at 427–28. On April 12, 2016, the Court of Appeals denied leave to appeal.

Vanguilder, 59 N.E.3d at 1229.

## III.     THE PETITION

Petitioner seeks habeas relief on the following grounds: (1) the evidence was legally

insufficient because the proof established that Petitioner "acted solely as an agent of the

purchaser" and was the subject of "entrapment"; (2) Petitioner's constitutional right to counsel

was violated when (a) the trial court failed to disqualify trial counsel due to a conflict of interest,

and (b) the trial court failed to "secure a valid waiver" from petitioner regarding the conflict;

(3) Petitioner was deprived of a fair trial when the trial court admitted prejudicial and irrelevant

testimony from Seymour; (4) the trial court erred in improperly responding to the jury's inquiries;

and (5) trial counsel was ineffective when he (a) failed to disclose his conflict of interest, (b)

failed to assert an entrapment defense, (c) failed to file motions to preserve Molineux issues that

arose at trial, and (d) failed to request an appropriate alternative charge regarding the duplicitous

counts in the indictment. Pet. at 6–25.

12

## IV.    DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2); accord Cullen v. Pinholster, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" Nevada v. Jackson, 569 U.S. 505, 508–09 (2013) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)); see also Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'" (quoting Richter, 562 U.S. at 103))).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Parker v. Matthews, 567 U.S. 37, 38

(2012) (per curiam) (quoting <u>Renico</u>, 559 U.S. at 779). A state court's findings are not

unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the

first instance would have reached a different conclusion. <u>Wood v. Allen</u>, 558 U.S. 290, 301

(2010). "The question under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable–a substantially

higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007).

Federal habeas courts must presume that the state courts' factual findings are correct

unless a petitioner rebuts that presumption with "clear and convincing evidence." <u>Id.</u> at 473–74

(quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual

determination if the state court failed to weigh all of the relevant evidence before making its

factual findings." <u>Lewis v. Conn. Comm'r of Corr.</u>, 790 F.3d 109, 121 (2d Cir. 2015). Finally,

"[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal

habeas court must presume that the federal claim was adjudicated on the merits." <u>Johnson v.</u>

<u>Williams</u>, 568 U.S. 289, 301 (2013).

### A. Legal Sufficiency

Petitioner asserts that the evidence was legally insufficient to support his conviction.[4]

Pet. at 6–9. Specifically, Petitioner contends that he was Seymour's agent and Willis was the

drug dealer; thus, he should not habe been convicted of the intent to sell or possession with intent

---

[4]  Petitioner includes the failure to plead an entrapment defense in connection with his
legal sufficiency claims. Pet. at 6 ("Petitioner was actively encouraged to commit the offense.
This constitutes an affirmative defense of entrapment. Not [sic] raised by his trial lawyer."). As
this statement relates to the quality of Petitioner's representation, it is more appropriately
construed as a claim of ineffective assistance of counsel and will be discussed *infra*.

to sell counts. Id. at 8–9. For the following reasons, such claims do not warrant habeas relief because they are procedurally defaulted and meritless.

### 1. Procedural Default

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254(b)(1)(A), (B)(i)–(ii). "The exhaustion requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)).

A petitioner must satisfy the exhaustion requirement both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004). In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of his or her claims. Barton v. Fillion, No. 03-CV-1377, 2007 WL 3008167, at *5 (N.D.N.Y. Oct. 10, 2007). "[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." <u>Clark v. Perez</u>, 510 F.3d 382, 390 (2d Cir. 2008) (quoting <u>Coleman v. Thompson</u>, 510 U.S. 722, 735 n.1 (1991)).

Here, Petitioner failed to raise his legal sufficiency claim in his motion seeking leave to appeal to the Court of Appeals. SCR at 428 ("The sole question preserved for consideration by the Court of Appeals is whether the . . . Third Department erred as a matter of law in determining that the county court's answers to questions posed by jurors were appropriately responsive. Appellant intends to raise no other issues."). Therefore, the claims were not presented to the highest court and are unexhausted. <u>See</u> <u>Galdamez v. Keane</u>, 394 F.3d 68, 74 (2d Cir. 2005) ("[W]e assume that the Court of Appeals would construe a petitioner's leave application as abandoning claims that [he] had pressed to the Appellate Division below. We therefore consider these claims procedurally defaulted for habeas purposes because of petitioner's failure to exhaust the claims properly before the state's highest court."); <u>Adsit v. Annucci</u>, No. 16-CV-0817, 2018 WL 1175090, at *7 (N.D.N.Y. Jan. 11, 2018) (explaining that any claims that were presented to the Appellate Division but omitted from the leave application were considered abandoned for exhaustion purposes); <u>Doumbia v. N.Y. Dep't of Civil Servs.</u>, No. 11-CV-7677, 2015 WL 3619536, at *14 (S.D.N.Y. Jun. 9, 2015) ("If, in such an application for leave to appeal, the petitioner plainly abandons any claims initially raised, such claims will not be considered exhausted for habeas purposes.").[5]

---

[5]   The prosecution conceded that the legal sufficiency claims were properly preserved, though argued that they lacked merit. SCR at 429–30. Further, the Third Department did not mention anywhere in its decision that the legal sufficiency claim was improperly preserved. Despite these facts, the claims were not further discussed by Petitioner as a basis of appeal.

It appears that counsel's oversight precipitated the failure to exhaust this claim. However, "the costs associated with an ignorant or inadvertent procedural default are no less than where the failure to raise a claim is a deliberate strategy: It deprives the state courts of the opportunity to review trial errors . . . [and] it undercuts the State's ability to enforce its procedural rules just as surely as when the default was deliberate." Coleman, 501 U.S. at 752 (citing Murray v. Carrier, 477 U.S. 478, 485 (1986)).

Further, the claim is procedurally defaulted because Petitioner can no longer raise it in any state forum. Petitioner already utilized the direct appeal to which he is entitled and, because the claim was reviewable from the record, he cannot raise it in a motion to vacate the judgment. See Grey v. Hoke, 933 F.2d 117, 120–21 (2d Cir. 1991) (explaining that where "the one request for leave to appeal" was taken and additional collateral review would be barred because the issues could have been raised on direct appeal, the "petitioner no longer has 'remedies available' in the . . . state courts . . . and . . . he had met the statutory exhaustion requirements . . .").

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or shows that the denial of habeas relief would result in a fundamental miscarriage of justice—i.e., that he or she is actually innocent. House v. Bell, 547 U.S. 518, 536–39 (2006); see also Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.") quoting Bousley v. United States, 523 U.S. 614, 623 (1998))). To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. Maples v. Thomas, 565 U.S. 266, 280 (2012). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief

17

is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. See Murray, 477 U.S. at 496 (referring to the "cause-and-prejudice standard").

Here, Petitioner does not identify any cause for his default, and he does not argue that he is actually innocent. Because cause was not established, no discussion of prejudice is necessary. Thus, there is nothing that can save Petitioner's procedurally defaulted claim, and habeas relief is precluded.

### B. Merits

Even if Petitioner's legal sufficiency claim had not been abandoned or was properly exhausted, or if he could show cause for his default, the claim would still fail because it is meritless. "[T]he critical inquiry on [the] review of the sufficiency of the evidence . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). The reviewing court must determine if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The reviewing court must be mindful that, when "faced with a record of historical facts that supports conflicting inferences [it] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Cavazos v. Smith, 565 U.S. 1, 7 (2011) (internal quotation marks and citations omitted). In seeking habeas corpus review, a petitioner who claims that the evidence was insufficient to sustain a conviction bears a "very heavy burden." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).

Here, Petitioner claims that his conviction is not supported by legally sufficient evidence because he acted as Seymour's agent; therefore, he reasons, the agency defense applied and absolved him of any criminal liability for several of his charges. See, e.g., People v. Lam Lek Chong, 379 N.E.2d 200, 205–06 (N.Y. 1978) (explaining the judicially-recognized agency exception to drug prosecutions whereby an individual who acts solely as an agent of the buyer is not guilty of selling drugs, but is instead only guilty of possession). With respect to the agency defense, the court instructed the jury to consider all the circumstances surrounding the drug transactions and enumerated specific factors to evaluate during deliberations. Those factors included the nature of the relationship between the defendant and buyer, which party first suggested the buy, whether the defendant had previously sold drugs on any other occasions, whether the defendant touted the goods with a salesman-like pitch, and whether the defendant stood to profit from the transaction. Vanguilder, 14 N.Y.S.3d at 534–35 (citing People v. Ortiz, 76 N.E.2d 162, 163 (N.Y. 1990)). Viewing the evidence in the light most favorable to the prosecution and drawing all permissible inferences in its favor, a rational fact finder could have found—and did find—that Petitioner was not an agent of the buyer.

The only factor potentially weighing in favor of Petitioner's asserted agency defense was the second factor, i.e., that the buyer first suggested the transaction. While there was not any direct communication between the two parties immediately before the first buy, it stands to reason that Seymour initiated the transaction in his capacity as a confidential informant. However, the other factors suggest that Petitioner was acting in a capacity other than as an agent.

First, the Petitioner and Seymour had only known each other for a month and had spent time together on a handful of occasions, indicating a tangential relationship at best.

19

Tr. at 371–73. Second, Petitioner had previously been convicted for possession of a controlled substance in connection with a prior, completely unrelated drug transaction, detracting from the defense of agency. Id. at 424, 466–68, 471, 485. Third, during the first controlled buy, Petitioner peppered Seymour with leading questions seemingly to convince him of the crack cocaine's high quality. Ex. 4 at 10:54–11:01. This salesmanship is the type that has been found to preclude an agency defense. People v. Roche, 379 N.E.2d 208, 212 (N.Y. 1978) ( holding that "salesman-like behavior, [which] . . . may include touting the quality of the product," diminishes the applicability of an agency defense.). Fourth, while Petitioner was not compensated with cash, he profited from the arrangement by receiving drugs. This was sufficient to satisfy the fourth factor about profit. People v. Robinson, 999 N.Y.S.2d 555, 559 (App. Div. 2014) ("[P]rofit does not necessarily equate with pecuniary gain; indeed, this Court has recognized that a defendant may stand to benefit from the underlying sale when such transaction was undertaken in the hopes of receiving [other goods or services] . . . ."). Petitioner stood to gain by receiving cocaine from Willis for his services as an intermediary, providing Willis access to his connections for her customer base, and allowing Willis to use his property, as well as receiving "tips" from his customers after their completed sales. Tr. at 379–80, 382–83, 402, 419–25, 467–70, 475–76, 485–88, 490; Ex. 4 at 11:06–11:51; Ex. 5 at 07:50–10:15. Accordingly, the Third Department reasonably concluded that the agency factors were not satisfied.

The role of agent "is not to be confused with that of a middleman . . . or a broker furthering his own interests by serving both seller and buyer—who thus essentially acts for himself rather than merely as an extension of the buyer." Roche, 379 N.E.2d at 211. Although Willis did not permit Petitioner to physically possess the crack cocaine, Willis described her

20

relationship with Petitioner as a "team," with him working as the intermediary, counting cash, exchanging money for drugs, and providing clientele. Tr. at 466, 469–70, 491. The Third Department reasonably concluded that this trial evidence was more than sufficient to establish that Petitioner "played a greater role than just a buyer's agent in the drug transactions." Vanguilder, 14 N.Y.S.3d at 535–36. Further, as the issue of whether Petitioner was an agent was "a factual question for the jury to resolve on the circumstances of the particular case," the Third Department reasonably credited that determination and there is no basis for upsetting it here. Id.

For the foregoing reasons, Petitioner's legal sufficiency claim does not entitle him to habeas relief.

### C.  Trial Court's Failure to Secure Proper Waiver or Advise Petitioner of Trial Counsel's Conflict of Interest

Petitioner alleges that the trial court violated his due process rights to a fair trial. Pet. at 13. Specifically, he contends that the court failed to thoroughly investigate and advise him regarding trial counsel's conflict of interest. Pet. at 13–18.

Here, the Third Department rejected Petitioner's conflict of interest claim, holding that Petitioner "fail[ed] to even allege that the potential conflict . . . affected, or operated on, or bore a substantial relation to the conduct of the defense in th[e] case . . . ." Vanguilder, 14 N.Y.S.3d at 537–38. Petitioner then failed to raise these claims in his motion seeking leave to appeal to the Court of Appeals. SCR at 428 ("The sole question preserved for consideration by the Court of Appeals is whether the . . . Third Department erred as a matter of law in determining that the county court's answers to questions posed by jurors were appropriately responsive. Appellant

21

intends to raise no other issues."). For the reasons discussed above, these claims are similarly unexhausted, procedurally defaulted, and barred.

Therefore, habeas relief is unwarranted.

**D. Admission of Irrelevant and Prejudicial Evidence**

*1. Procedural Default*

Petitioner contends he was deprived of a fair trial when the trial court admitted prejudicial and irrelevant testimony from Seymour about a gun being brandished at Petitioner's home. Pet. at 19–20. For the following reasons, Petitioner's claim is procedurally defaulted and, in any event, lacking in merit.

Regardless of the claim, a federal court is precluded from issuing a writ of habeas corpus if an adequate and independent state law ground justifies the petitioner's detention. See Wainwright, 433 U.S. at 81–85. Accordingly, "[f]ederal courts generally will not consider a federal issue in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007) (quoting Lee v. Kemma, 534 U.S. 362, 375 (2002)). This results in a state law procedural default, Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991), and this analysis applies with equal force "whether the independent state law ground is substantive or procedural . . . ," Garvey, 485 F.3d at 713 (citing Lee, 534 U.S. at 375). Pursuant to this analysis, a state law ground is generally adequate where "it is firmly established and regularly followed in the state"; however, "in certain limited circumstances, even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule . . .

22

[wa]s exorbitant." Id. at 713–14 (citing Lee, 534 U.S. at 376). Exorbitant application of a

generally sound rule requires consideration of

> (1) whether the alleged procedural violation was actually relied on in
> the trial court, and whether perfect compliance with the state rule
> would have changed the trial court's decision; (2) whether state
> caselaw indicated that compliance with the rule was demanded in the
> specific circumstances presented; and (3) whether Petitioner had
> "substantially complied" with the rule given "the realities of trial,"
> and, therefore, whether demanding perfect compliance with the rule
> would serve a legitimate government interest.

Cotto, 331 F.3d at 240 (citing Lee, 534 U.S. at 381–85).

"[I]n order to preserve a claim of error in the admission of evidence or a charge to the

jury, a defendant must make his or her position known to the court." People v. Gray, 652 N.E.2d

919, 921 (N.Y. 1995) (citing CPL § 470.05); see also Downs v. Lape, 657 F.3d 97, 103

(2d Cir. 2011) ("The relevant part of the contemporaneous objection rule . . . provides that . . .

New York appellate courts will review only those errors of law that are presented at a time and in

a manner that reasonably prompted a judge to correct them . . . ."). "The chief purpose of

demanding notice through [specific] objection or motion in a trial court . . . is to bring the claim

to the trial court's attention. A general motion fails at this task." Gray, 652 N.E.2d at 922. The

Second Circuit has long held "that the contemporaneous objection rule is a firmly established and

regularly followed New York procedural rule . . . [and] constitutes an independent and adequate

state law ground for disposing of a claim . . . ." Downs, 657 F.3d at 104; see also Richardson v.

Green, 497 F.3d 212, 219 (2d Cir. 2007) ("[I]n accordance with New York case law, [the Second

Circuit has held that] application of the state's preservation rule is adequate—i.e., firmly

established and regularly followed."); Santana v. Lee, No. 11-CV-105, 2015 WL 4207230, at *20 (N.D.N.Y. July 2, 2015) (same).

Here, the Third Department rejected Petitioner's claim that the trial court "err[ed] in allowing testimony that a person threatened the CI with a gun," because Petitioner's Molineux and relevancy objections were not preserved for the court's review. Vanguilder, 14 N.Y.S.3d at 536 (citing, *inter alia*, Gray, 652 N.E.2d at 922, emphasizing the necessity, and resulting universal applicability, of the contemporaneous objection/preservation rule in New York). This constitutes an independent and adequate state ground. Downs, 657 F.3d at 104; Richardson, 497 F.3d at 219; Santana, 2015 WL 4207230, at *20.

Further, examination of the Cotto factors supports the conclusion that application of the procedural bar was not exorbitant. The Third Department clearly relied upon the failure to contemporaneously object in its rejection of Petitioner's arguments; however, the court went on to consider the merits of the claim, indicating that the analysis would not have changed had Petitioner properly preserved his claim. Second, the Court of Appeals has consistently held that claims related to admissibility of evidence and jury charges are subject to the contemporaneous objection rule, which must be followed for such claims to be properly preserved for appellate review. Gray, 652 N.E.2d at 921–22. Lastly, Petitioner did not properly comply with the rule, despite the clear case law that instructs that objections are required to preserve claims regarding jury requests. Id. Thus, the procedural bar precludes habeas relief.

Again, Petitioner has not asserted that cause for the default exists or that he is actually innocent. Accordingly, Petitioner's claim is procedurally barred.

24

2. *Merits*

Petitioner contends that he was denied his right to a fair trial when the trial court

permitted Seymour to testify about an instance where a man brandished a gun at Petitioner's

house, outside of Petitioner's presence or direction, in an apparent attempt to show off for the

crowd of people who had congregated there that day. Tr. at 451–52. Petitioner contends that this

evidence was unfairly prejudicial. Pet. at 19.

"There is no question that the introduction of unfairly prejudicial evidence against a

criminal defendant is contrary to state law, as well as federal law. Federal habeas corpus relief,

however, does not lie for just any error of state evidence law . . . ." <u>Wallace v. Superintendent,</u>

<u>Franklin Corr. Facility</u>, No. 12-CV-2117, 2013 WL 8291401, at *7 (E.D.N.Y. Nov. 14, 2013). In

fact, the Supreme Court has "acknowledge[d its] . . . traditional reluctance to impose

constitutional constraints on ordinary evidentiary rulings by state trial courts." <u>Crane v.</u>

<u>Kentucky</u>, 476 U.S. 683, 689 (1986). "[T]he Due Process Clause does not permit the federal

courts to engage in a finely-tuned review of the wisdom of state evidentiary rules . . . ." <u>Marshall</u>

<u>v. Lonberger</u>, 459 U.S. 422, 438 n.6 (1983). Each state is "free to provide such procedures as [it]

choose[s], including rules of evidence, provided that none of them infringes a guarantee in the

Federal Constitution." <u>Burgett v. Texas</u>, 389 U.S. 109, 113–14 (1967).

> Any such error of constitutional magnitude must also be material,
> which is to say it must have had a substantial and injurious effect or
> influence in determining the jury's verdict. Where the evidence
> erroneously admitted is merely probative of a non-essential element
> of the case, its admission only amounts to a denial of due process if
> it is sufficiently material to provide the basis for conviction or to
> remove a reasonable doubt that would have existed without it. This
> determination requires an analysis of the overall strength of the

> prosecution's case to determine that the remaining evidence against
> the defendant was at least "weighty."

Wallace, 2013 WL 8291401, at *7 (internal quotation marks and citations omitted).

Here, there is no possibility that Seymour's testimony regarding the third-party individual and his gun was so unfairly prejudicial and material to have a substantial and injurious influence on the jury's verdict. The third party was irrelevant to the material facts underlying the criminal conviction. Further, his actions were separate and independent from Petitioner and the offenses of which Petitioner was accused. There was no connection between the two. And the other evidence which the jury relied upon to convict Petitioner, as previously discussed, was "weighty," such that there is no cause to believe that the jury's verdict would have been different had Seymour's testimony not been admitted. The testimony simply had no bearing on Petitioner's criminal propensities or the actions which occurred during the controlled buys, and nothing in the record suggests that it influenced the jury's verdict.

Further, Petitioner opened the door to the evidence by eliciting information regarding Seymour's credibility. Defense counsel attempted to establish that Seymour was not as altruistic as he seemed and instead was warning the major drug dealers about police activity to curry their favor. Tr. at 441–47. Seymour was then questioned about his fears for his safety acting as a confidential informant. This led Seymour to discuss this particular instance in greater detail, as an example of when his safety was compromised. Id. at 446–47, 451–52. As "the evidentiary rule concerning door-opening is at least as venerable as the rule excluding prior bad acts [and b]ecause the trial court followed the evidentiary law as set out by New York's highest court," habeas relief is foreclosed as reviewing courts are precluded from "engag[ing] in a finely tuned

26

review of the wisdom of state evidentiary rules." Rios v. Artuz, No. 07-CV-0330,

2007 WL 1958899, at *7 (E.D.N.Y. Jun. 29, 2007).

Lastly, the trial court twice provided, without objection, limiting instructions to the jury

explaining that Seymour's testimony was "no proof whatsoever that the [Petitioner] possessed a

propensity or disposition to commit the crimes charged in this Indictment or any other crime."

Tr. at 453, 577. "[T]he Supreme Court has frequently observed [that] the law recognizes a strong

presumption that juries follow limiting instructions." United States v. Snype, 441 F.3d 119,

129–130 (2d Cir. 2006) (citing Zafiro v. United States, 506 U.S. 534, 540–41 (1993)); accord

Spencer v. Texas, 385 U.S. 554, 562 (1967). Accordingly, to the extent there was any error, it

was timely cured when the trial court, on two separate occasions, provided the aforementioned

instructions.

Therefore, Petitioner's claim to habeas relief is denied.

**E.  Trial Court Failed to Meaningfully Respond to a Jury Question**

Petitioner contends that his right to a fair trial was violated when the court failed to

meaningfully respond to a jury note. Pet. at 21. Specifically, the jury asked, "Can a defendant be

an agent for both the seller and buyer?" Tr. at 609–610. Petitioner contends that the trial court

erred in not providing more definitions, written copies of the charges, or further clarification, as

the jury was forced to "speculate on an issue it did not readily and adequately grasp . . . ." Pet.

at 22; Traverse at 12–13. The Appellate Division determined that the trial "[c]ourt's choice to

accurately answer the questions that the jury asked without going beyond the jury's request was

within the court's discretion and appropriately responsive." Vanguilder, 14 N.Y.S.3d at 536.

For the following reasons, that conclusion was not contrary to, or an unreasonable application of, clearly established federal law.

The Supreme Court "places an especially heavy burden on a [petitioner] who . . . seeks to show constitutional error from a jury instruction . . . ." <u>Waddington v. Sarausad</u>, 555 U.S. 179, 190 (2009).

> Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation. Rather, the defendant must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. In making this determination, the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.

<u>Id.</u> at 190–91. "The court must ask 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" <u>Robinson v. Heath</u>, No. 12-CV-2116, 2013 WL 5774544, at *6 (E.D.N.Y. Oct. 24, 2013) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)).

In evaluating Petitioner's allegations that the jury required further clarification, "the court must answer . . . three questions: (1) whether some form of clarification . . . was required [by] . . . New York State law; (2) if so, whether the failure to give the requested clarification violated the [<u>Cupp</u>] standard . . . and (3) if so, whether the state court's failure is . . . remediable by habeas corpus . . . ." <u>Robinson</u>, 2013 WL 5774544, at *6 (internal quotation marks omitted). Here, the Third Department's affirmation of the trial court's decision to re-read the charge without further clarification or provision of a written copy was neither contrary to nor an unreasonable application of federal law.

The first question asks whether further clarification was required. It was not. New York's Criminal Procedure Law requires courts to provide juries with "such requested information or instruction as the court deems proper." CPL § 310.30.[6] While the court is left with a degree of discretion, New York has long held that "the trial court . . . must give meaningful supplemental instructions." People v. Malloy, 434 N.E.2d 237, 239 (N.Y. 1982). This "does not mean that a rereading of the original charge is per se insufficient . . . [especially] whe[re] the original instruction is accurate and where the jury expresses no confusion regarding the original charge." Robinson, 2013 WL 5774544, at *7. Conversely, where the jury is "misled by or not comprehending the original charge [and is] perplexed about the elements of the crime or the application of the law to the facts," reciting the charge alone is inappropriate. Malloy, 434 N.E.2d at 240. Whether meaningful instruction was provided is determined by "the form of the jury's question, . . . the particular issue of which inquiry is made, the supplemental instruction actually given and the presence or absence of prejudice to the [petitioner]." Id.

Here, the court's response to the second jury note, upon which Petitioner specifically relies in articulating his claim, was a meaningful one which required no further clarification. After receiving the instruction that, for the agency defense to apply, Petitioner must have "solely [been] an agent of the buyer alone," Tr. at 616, "the jury did not request additional clarification on that particular issue, thereby indicat[ing] that they were not perplexed or mislead, but, rather, satisfied with the response," Robinson, 2013 WL 5774544, at *8; see also Malloy, 434 N.E.2d

---

6  This statutory section also provides, in pertinent part, that "[w]ith the consent of the parties and upon the request of the jury . . . , the court may also give to the jury copies of the text of any statute which . . . the court deems proper." CPL § 310.30. To the extent Petitioner's claim, when liberally construed, asserts that failure to provide the jury with a written copy of the agency defense violated his constitutional rights, such a claim is unavailing.

at 240 ("[R]equests [for] further instruction[] on [a] legal point, . . . do[] not necessarily import . . . jury [confusion] . . . by the original charge. Rather, the jury simply may wish to have that critical concept refreshed in their minds or explained in isolation, without the distractions of the remaining portions of the full charge."). Given the importance of the agency defense, it is reasonable that the jury, taking its job seriously, wanted to pay special attention to the mechanics and applicability of the defense. However, this does not signify that the jury was confused about the instruction it was given. The fact that the jury reached a verdict without ever revisiting the issue supports this conclusion. Robinson, 2013 WL 5774544, at *8.

Further, the trial court's response to the jury was not a violation of Petitioner's due process rights. Because "[a] jury is presumed to follow its instructions . . . [and] understand a judge's answer to its question," where the court "responded to [a] jury's question by directing its attention to . . . [an] adequate instruction that answers its inquiry," the court has complied with its constitutional obligations and a petitioner has been provided with his due process rights. Weeks v. Angelone, 528 U.S. 225, 234 (2000). Even if the response was an error, taking that response in conjunction with rereading the agency charge does not satisfy the Cupp standard. Furthermore, "reread[ing] a legally correct charge that was responsive to the jury's request was by no means unreasonable," and is consistent with a fair trial. Robinson, 2013 WL 5774544, at *10. The Third Department's conclusion holding the same thus represents a reasonable application of clearly established federal law.

Accordingly, the habeas petition is denied on this ground.

30

### F.  Right to Counsel

Petitioner argues that he was denied his Sixth Amendment right to counsel in two ways: due to a conflict of interest and under a conventional ineffective assistance theory. Pet. at 24–25. Specifically, Petitioner contends that trial counsel had an actual conflict of interest, which resulted in counsel failing to advance an entrapment defense. Id.; see also Traverse at 3–11, 15–17. Next, Petitioner contends that trial counsel's performance was deficient by: (1) not objecting to Seymour's gun testimony; (2) not requesting the lesser-included misdemeanor charges be submitted to the jury in the alternative to the felony charges; and (3) not pursuing an entrapment defense. Pet. at 24–25; Traverse at 14–17. For the reasons that follow, both theories are procedurally defaulted and, in any event, without merit.

#### 1.  Procedural Default

Here, the Third Department rejected both of Petitioner's right to counsel claims. Vanguilder, 14 N.Y.S.3d at 537–38 (concluding Petitioner failed to articulate how or why his defense was impacted by the alleged conflict and finding trial counsel's performance, even when considering counsel's failure to request an alternative charge, not deficient overall). Petitioner then failed to raise these claims in his motion seeking leave to appeal to the Court of Appeals. SCR at 428 ("The sole question preserved for consideration by the Court of Appeals is whether the . . . Third Department erred as a matter of law in determining that the county court's answers to questions posed by jurors were appropriately responsive."). For the reasons discussed above, these claims are similarly unexhausted, procedurally defaulted, and barred.

Therefore, habeas relief is inappropriate.

2. *Merits*

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different. Premo v. Moore, 562 U.S. 115, 121–22 (2011); Strickland v. Washington, 466 U.S. 668, 694 (1984). The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings." Premo, 562 U.S. at 122. Even if petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. Strickland, 466 U.S at 693–94.

a. Conflicts of Interest

"[W]here a[n] . . . ineffective assistance . . . claim is based on an alleged conflict of interest, a [petitioner] is entitled to a presumption of prejudice if he can demonstrate that his attorney labored under an actual conflict of interest and that the actual conflict of interest adversely affected his lawyer's performance." United States v. Rivernider, 828 F.3d 91, 109 (2d Cir. 2016) (quoting United States v. Davis, 239 F.3d 283, 286 (2d Cir. 2001)). Accordingly, Petitioner "need only prove that some 'plausible alternative defense strategy or tactic might have been pursued.'" Id. (quoting United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994)).

Here, Petitioner contends a conflict arose because his trial counsel also represented Seymour's girlfriend in a civil personal injury matter, during which there was the potential that Seymour could be a witness and for which trial counsel's firm had a pecuniary interest. Tr. at 75–76. Petitioner contends that this conflict led trial counsel to avoid questioning Seymour

32

about facts which would have given rise to an entrapment defense. Pet. at 24; Traverse at 3–11.

However, as noted by the Third Department, Petitioner has "fail[ed] to even allege that the

potential conflict arising from defense counsel's simultaneous representation of a third party in

an unrelated matter 'affected, operated on, or [bore] a substantial relation to the conduct of the

defense in this case . . . .'" Vanguilder, 14 N.Y.S.2d at 537–38 (quoting Sanchez, 969 N.Y.S.2d

840). Thus, he has failed to establish an actual conflict or lapse in representation.

The record does not reveal who might have called Seymour at the personal injury trial

referenced by defense counsel or why he would have been a relevant witness. Further, the record

demonstrated that trial counsel did not see an actual conflict of interest that would preclude

Petitioner's ongoing representation. Tr. at 75–76. Even if an actual conflict did exist, Petitioner

failed to identify a course of action counsel neglected to pursue because of his divergent interests.

Petitioner contends counsel's potential pecuniary gains dissuaded him from advancing an

entrapment defense. However, for the reasons discussed below, it was not pecuniary interests that

appeared to guide that decision, it was tactics. Accordingly, as the Third Department was

reasonable in its application of the federal standards and denying Petitioner's claim, habeas relief

is inappropriate.

### b.  Ineffective Assistance of Counsel

"Strickland does not guarantee perfect representation, only a reasonably competent

attorney." Harrington v. Richter, 562 U.S. 86, 110 (2011) (quoting Strickland, 466 U.S. at 687)

(internal quotation marks and further citation omitted). A petitioner must overcome "a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance . . . [and] that, under the circumstances, the challenged action 'might be considered

sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

"In assessing [counsel's] performance, [the court] must apply a heavy measure of deference to counsel's judgments." Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (internal quotation marks and citations omitted). "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Id. (citing Strickland, 466 U.S. at 690). That being said, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." Strickland, 466 U.S. at 691. "[W]hen there is reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Greiner, 417 F.3d at 321 (internal quotation marks omitted). A similar inquiry surrounds challenges regarding witnesses as "[t]he decision not to call a particular witness is typically a question of trial strategy that reviewing courts are ill-suited to second-guess. . . . Thus, counsel's decision as to whether to call specific witnesses—even ones that *might* offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." Id. at 323 (internal quotation marks and citations omitted) (emphasis added); see also Mills v. Poole, No. 06-CV-842, 2008 WL 2699394, at *26 (W.D.N.Y. June 30, 2008) ("In general, whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review.").

Here, Petitioner cannot establish either prong of the Strickland test: There is nothing in the record to support the conclusion that counsel's performance was objectively unreasonable or incompetent or that Petitioner was prejudiced by counsel's representation.

First, the Third Department stated that Seymour's gun testimony became relevant as a result of "previous questioning by defense counsel as to whether the CI chose to implicate defendant—rather than allegedly more central drug dealers in the operation." Vanguilder, 14 N.Y.S.3d at 536. Accordingly, trial counsel's objections would have been fruitless as he had opened the door to evidence regarding the level of the CI's safety. "The failure to make meritless arguments or objections cannot constitute ineffective assistance." Baptiste v. Ercole, 766 F. Supp. 2d 339, 362 (N.D.N.Y. 2011).

Second, counsel's error in not requesting that the lesser-included misdemeanor counts be submitted in the alternative as inclusory counts was not prejudicial to Petitioner. First, for the amount of time that all the convictions stood, the trial court sentenced Petitioner concurrently on his misdemeanor and felony convictions. Thus, the duration of Petitioner's incarceration has remained the same. Second, on direct appeal, the Third Department vacated the misdemeanor convictions and dismissed those counts of the indictment. Vanguilder, 14 N.Y.S.3d at 536–37. Accordingly, the result of the proceedings would not have been different had trial counsel initially presented the counts as inclusory because the felony convictions, and the sentences imposed, would still stand.

Third, Petitioner's contentions that counsel should have pursued an entrapment defense are, at their core, a disagreement over fundamental trial strategy.[7] Counsel chose instead to vigorously and competently pursue an agency defense. Selecting defenses to present and how to present them are tactical decisions within the professional purview of the attorney. Counsel focused on the kind of evidence that would lead a jury to acquit Petitioner on an agency defense, pursued that theory through extensive cross-examination of the People's witnesses, and discredited Willis and Seymour. "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance, and a court may not use hindsight to second-guess counsel's tactical choices." McKee v. United States, 167 F.3d at 106 (internal citations and quotation marks omitted).

For the foregoing reasons, Petitioner is not entitled to habeas relief.

## V.    CONCLUSION

Accordingly, it is hereby:

---

[7]  Petitioner expands upon this claim in his Traverse, specifically alleging that counsel should have had him testify during the trial. However, "[t]his argument is not in the original petition, and arguments may not be made for the first time in a reply brief," even if made by a *pro se* litigant. Hines v. Stallone, No. 16-CV-1078, 2017 WL 445381, at *7 n.5 (N.D.N.Y. Feb. 1, 2017) (quoting Diaz v. United States, 633 F. App'x 551, 556 (2d Cir. 2015)). Further, even if it had been properly exhausted, such a claim amounts to a disagreement over trial strategy. Given the fact that "[a] defendant has no right to avoid cross-examination into the truth of his direct examination [and] even as to matters not related to the merits of the charges against him," it is reasonable that trial counsel would avoid further impeachment and potential negative credibility assessments and instead rely upon the objective evidence contained in the video to serve as the basis for telling the story of the underlying events. United States v. Payton, 159 F.3d 49, 58 (2d Cir. 1998). For the same reasons stated above, such actions represent seemingly reasonable trial strategy that should not be second-guessed. McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999).

**ORDERED**, that the Petition (Dkt. No. 1) is **DENIED and DISMISSED in its entirety**; and it is further

**ORDERED**, that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[8] and it is further

**ORDERED**, that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     May 23, 2018
           Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[8]  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); see also Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).